# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| MELISSA GAMMEL and BRAD GAMMEL, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiffs, | ) |  |
| vs. | ) | NO. CIV-14-1385-HE |
|  | ) |  |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## ORDER

Plaintiffs Melissa and Brad Gammel (the "Gammels") filed suit against defendant UNUM Life Insurance Company of America ("UNUM"), asserting claims for bad faith and fraud. The dispute is centered on a life insurance policy issued by UNUM to Earlene Forsythe (Melissa Gammel's mother and Brad Gammel's grandmother). Plaintiffs allege that UNUM wrongfully denied benefits under that policy. UNUM has now moved for summary judgment on both claims.

Summary judgment should be granted where—in light of the pleadings, discovery materials, and any affidavits—there is no "genuine dispute" as to any "material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is material "if it might affect the outcome of the suit." Bennett v. Windstream Communications, Inc., 792 F.3d 1261, 1265 (10th Cir. 2015). The court must draw all reasonable inferences from the evidence in the light most favorable to the nonmoving party. In re Wal-Mart Stores, Inc., 395 F.3d 1177, 1189 (10th Cir. 2005).

Factual Background

The factual background of this case is substantially undisputed.[1] Earlene Forsythe ("Forsythe") worked for Comanche County Memorial Hospital (the "Hospital") as a registered nurse until she retired on November 30, 2011. While employed at the Hospital, Forsythe was insured under a group policy for life and accidental death and dismemberment insurance. When she retired, her group coverage expired and she had two options to pursue continued coverage: conversion coverage or portability coverage.

Under UNUM's policy, all insureds whose group coverage terminated due to a qualifying event (including retirement) had the option to "convert" their life insurance coverage to an individual policy, which could provide limits up to the amount that was provided under the group policy but would cost premium at rates substantially higher than the group premium rates. Some group policies, however, including the Hospital's group policy, allowed insureds to "port" their life insurance coverage to a policy that would include coverage limits at a percentage of the group policy limits, and would continue to be billed at the group premium rate. To qualify for the portability coverage under the Hospital's policy, an insured was required to certify on a coverage application to the absence of any medical condition that had a material effect on life expectancy. If a claim was filed within two years of the effective date on a ported policy and if UNUM learned that the insured had

---

[1]*Defendant's brief sets out as undisputed facts a general explanation of how its life insurance coverages can be continued after a member of a group life insurance policy ends participation in the group coverage. Plaintiffs purport to dispute some of those facts, but nearly all of the disputes are non-responsive to the facts asserted and do not create genuine factual disputes.*

such a medical condition at the time of the application, the beneficiaries could only recover a reduced amount of insurance (a "commuted benefit") which was based on what the policy premium would have purchased at an individual rate.

Forsythe applied for portability coverage in the amount of $30,000 for life insurance benefits. Due to a clerical error which is not the basis of the dispute here, UNUM approved coverage and charged premiums for only $19,500 in coverage. On November 13, 2012, less than two years after the policy effective date, Forsythe passed away. Plaintiffs submitted a claim under the life insurance policy. In the course of investigating the claim UNUM learned that despite Forsythe's certification on her application that she had no medical condition that had a material effect on her life expectancy, by that time she had been diagnosed with various medical conditions including coronary artery disease, atrial fibrillation, hypertension, diabetes mellitus (Type 2), and morbid obesity. UNUM therefore paid plaintiffs a "commuted benefit" totaling $1,826 and plaintiffs filed this suit.

## Discussion

As noted above, plaintiffs assert two claims, one for bad faith breach of contract and one based on fraudulent representations allegedly made by defendant.

Plaintiffs assert UNUM breached its duty of good faith and fair dealing in two ways. First, they argue that UNUM failed to investigate whether Forsythe submitted her answers on the insurance application with an intent to deceive, and as a result UNUM unreasonably denied the full benefits of her portability coverage. Second, they argue UNUM improperly calculated Forsythe's commuted benefit by including an annual "conversion fee" which

3

further reduced the benefit amount.

Under Oklahoma law, insurers can decline coverage on the basis of the insured's misrepresentations only in limited circumstances—when the misrepresentation is fraudulent, material to acceptance of the risk, or such that if the insurer had known the truth it would not have issued coverage to the extent it did. 36 Okla. Stat. § 3609; see Roesler v. TIG Ins. Co., 251 F. App'x 489, 500–01 (10th Cir. 2007) (unreported).² The Oklahoma Supreme Court has interpreted § 3609 to include a requirement of knowledge of the representation's falsity or some intent to deceive. Hays v. Jackson Nat'l Life Ins. Co., 105 F.3d 583, 584, 587 (10th Cir. 1997) (adhering to Mass. Mut. Life Ins. Co. v. Allen, 416 P.2d 935 (Okla. 1965)). As a result, failure to investigate the facts related to an insured's knowledge or motivation in making a false or incorrect representation may, in a proper case, expose an insurer to liability for bad faith. Roesler, 251 F. App'x at 503–05.

Nonetheless, a plaintiff asserting bad faith based on inadequate investigation "must make a showing that material facts were overlooked or that a more thorough investigation would have produced relevant information." Id. at 503 (quoting Timberlake Const. Co. v. U.S.F.&G Co, 71 F.3d 335, 345 (10th Cir. 1995)). The reasonableness of an investigation has been found to be a proper basis for a bad faith claim where the insurer failed to ask an applicant to explain an inconsistency on an application and such an explanation was available. Id. at 503–05 (analyzing supporting cases from the Oklahoma Supreme Court, the

---

²Roesler is cited for persuasive value only under 10th Cir. R. 32.1.

Oklahoma Court of Civil Appeals, and the U.S. District Court for the Western District of Oklahoma). But when a plaintiff identifies no information that would change the underlying facts on which an insurer can reasonably rely, summary judgment is appropriate. Id. at 505 (discussing Sims v. Great American Life Ins. Co., 469 F.3d 870, 892–93 (10th Cir. 2006)).

Here, there is no dispute that Forsythe had all of the medical conditions that UNUM uncovered in its investigation. And there is no dispute that Forsythe, a registered nurse, knew of her conditions at the time she made her application. Prior to her application date, she had visited a cardiologist five times. See Doc. No. 46, ex. 9. The medical records from Forsythe's treating physicians are evidence on which UNUM could "reasonably rely" when "making its preliminary decision to dispute coverage." Sims, 469 F.3d at 892 (noting official reports such as death certificate, accident report, and medical examiner's report are not prepared at the behest of the insurer).

Plaintiffs' arguments pertaining to Forsythe's intent or understanding of the application terms rely only on statements made by them—the policy beneficiaries—with no explanation of how they would have known of her state of mind at the time she made her application. Like the statements made by the policy beneficiary in Sims, this is not sufficient to change the underlying facts on which UNUM was entitled to rely. Similarly, plaintiffs have identified no additional information that UNUM might have uncovered had it conducted a more extensive investigation. In sum, plaintiffs' submissions are insufficient to create a justiciable question as to the sufficiency of the investigation. Summary judgment is therefore appropriate as to plaintiffs' bad faith claim grounded on that issue.

Plaintiffs further argue that UNUM acted in bad faith because it impermissibly reduced the commuted benefit amount by including an annual conversion fee, which reduced the premium on which the ultimate policy benefit was actually based. Although the annual conversion fee was filed and approved with the Oklahoma Insurance Department for conversion policies, plaintiffs argue it should not apply to Forsythe's policy because she was not issued a conversion policy. Further, plaintiffs argue, Forsythe's policy did not specify that it would apply a conversion fee to any calculation of commuted benefits.

Under the group policy issued to Forsythe, if UNUM determined she had an injury or sickness which had a material effect on life expectancy and that she was thus not eligible for portability coverage at the time she elected it, "the benefit will be adjusted to the amount of whole life coverage the premium would have purchased under the Conversion Privilege." Doc. No. 46, ex. 1 at p. 43. This language does not specify whether conversion policy fees will apply but it does state the adjusted benefit will be calculated based on the conversion policy. At most, then, there is a legitimate dispute regarding whether the policy allowed for application of the conversion fee in the circumstances existing here. The existence of such a dispute, without more, will not support an inference of bad faith. See Oulds v. Principal Mut. Life Ins. Co., 6 F.3d 1431, 1440 (10th Cir. 1993) ("No reasonable inference of bad faith arises from the insurer's withholding payment based on a legitimate dispute.") (internal citation omitted). Defendant is entitled to summary judgment as to this issue.

With respect to their fraud claims, plaintiffs assert defendant made fraudulent representations by informing Forsythe she "may" continue her life insurance coverage when

6

she actually had a right to converted insurance coverage. Even if this is the case, plaintiffs make no effort to show that the representations induced Forsythe to purchase the policy. See Varn v. Maloney, 516 P.2d 1328, 1332 (Okla. 1973) ("[P]roof [of fraud] must show a material false representation, made with knowledge of its falsity or recklessly without knowledge as to its truth or falsity, as a positive assertion, with the intention that it be acted upon by another, who does act in reliance thereon, to his injury.") (emphasis added).

Plaintiffs also assert defendant made fraudulent representations that Forsythe's coverage was approved at requested policy limits without evidence of insurability, when in fact UNUM reduced her policy coverage after investigating Forsythe's "insurability" at the time the claim was submitted. However, both the group life policy under which the portability option was available and the application for portability coverage made clear that eligibility for coverage depended on the absence of any medical condition that had a material effect on life expectancy. They also indicated that if such a medical condition was discovered to have existed, the policy benefit would be reduced to that which a conversion policy would provide. No showing has been made that Forsythe's policy or the Gammels' claim were handled contrary to the terms expressed in the group insurance policy. Further, no evidence has been submitted which would support an inference that UNUM intended to breach the policy terms at the time it made the representations. See Citation Co. Realtors, Inc. v. Lyon, 610 P.2d 788, 790–91 (Okla. 1980) (explaining that promises to perform in the future do not constitute fraud unless the maker of the promise intends not to perform at the time the promise is made). Accordingly, summary judgment is appropriate as to plaintiffs'

fraud claim.

Defendant's motion for summary judgment [Doc. No. 46] is **GRANTED**. Judgment will be entered for defendant as to all claims.

**IT IS SO ORDERED**.

Dated this 4th day of May, 2016.

JOE HEATON
CHIEF U.S. DISTRICT JUDGE